UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| CHRISTOPHER SCOTT BOWER,<br><br>Petitioner,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Respondent. | Case No.: 1:19-cv-00101-REB<br><br>**MEMORANDUM DECISION AND ORDER** |

Before the Court is Petitioner Christopher Scott Bower's Petition for Review (Dkt. 1), seeking review of the Social Security Administration's denial of his application for Social Security Disability Insurance Benefits for lack of disability. This action is brought pursuant to 42 U.S.C. § 405(g). Having carefully considered the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

On August 14, 2017, Christopher Scott Bower ("Petitioner") filed an application for Title II Disability Insurance Benefits, alleging disability beginning June 1, 2016. This claim was initially denied on October 6, 2017 and, again, on reconsideration on December 1, 2017. On December 12, 2017, Petitioner filed a Request for Hearing before an Administrative Law Judge ("ALJ"). On May 3, 2018, ALJ David Willis held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney Maren Ann Miller Bam, appeared and testified. William J. Tysdal, an impartial vocational expert, also appeared and testified at the same May 3, 2018 hearing.

On August 27, 2018, the ALJ issued a Decision denying Petitioner's claim, finding that he was not disabled within the meaning of the Social Security Act. Petitioner timely requested

**MEMORANDUM DECISION AND ORDER - 1**

review from the Appeals Council and, on January 28, 2019, the Appeals Council denied Petitioner's Request for Review, making the ALJ's Decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner filed the instant action on March 28, 2019 (now represented by attorney Bradley D. Parkinson), arguing that the ALJ's Decision "is not supported by substantial evidence and is contrary to law and regulation." *See* Pet. for Review, p. 2 (Dkt. 1).  In particular, Petitioner claims that the ALJ's residual functional capacity determination is unsupported by substantial evidence as he (1) "failed to properly weigh the opinion of [Petitioner's] treating physician, [Colin Poole, M.D.], instead relying on select portions of the record"; and (2) "failed to properly explain his reasoning for not finding [Lee Lindquist, M.D.'s,] reaching limitations persuasive."  Pet.'s Brief, pp. 1, 10, 14 (Dkt. 10). Petitioner therefore requests that the Court either reverse the ALJ's Decision and find that he is entitled to disability benefits or, alternatively, remand the case for further proceedings.  *See id*. at p. 15; *see also* Pet. for Review, p. 2 (Dkt. 1).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  *See* 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive.  *See* 42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *See Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See Richardson v. Perales*, 402 U.S. 389, 401

**MEMORANDUM DECISION AND ORDER - 2**

(1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993).  The standard is fluid and nuanced, requiring more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975)), and "does not mean a large or considerable amount of evidence."  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the entire record to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.  The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).  Where the evidence is susceptible to more than one rational interpretation, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ.  *See Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

As to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed or remanded for legal error.  *See Matney*, 981 F.2d at 1019.  The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law.  *See id*.  However, to be clear, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute."  *See Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.**     **Sequential Process**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§

**MEMORANDUM DECISION AND ORDER - 3**

404.1520, 416.920) – or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) – within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. *See* 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. *See* 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ found that Petitioner "has not engaged in substantial gainful activity since June 1, 2016, the alleged onset date." (AR 16).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. *See* 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner has the following

**MEMORANDUM DECISION AND ORDER - 4**

medically determinable impairments: "reconstructive surgery of weight bearing joint, diabetes mellitus, major joints dysfunction, and sleep-related breathing disorders." (AR 17).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *See id*. Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. *See* (AR 19).

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity ("RFC") is sufficient for the claimant to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. *See* 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. *See* 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. On this point, the ALJ concluded:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift, carry, push, or pull 20 pounds occasionally and no greater than 10 pounds frequently; sit for six hours of an eight-hour day and stand/walk for six hours of an eight-hour day and would require a cane for ambulation in the workplace; and throughout the workday, after 30 minutes of standing or walking must be able to sit for 15 minutes. He can occasionally climb stairs and ramps primarily to

**MEMORANDUM DECISION AND ORDER - 5**

>enter and exit the workplace; never climb ladders, ropes, or scaffolds; occasionally stoop and kneel; and never crouch or crawl. He must never be exposed to vibration, unprotected heights, or moving mechanical parts – moving mechanical parts also involves moving machinery. He cannot operate a motor vehicle as part of the employment. He must avoid concentrated exposure to extreme cold and extreme heat. He will be off-task up to 5% of an eight-hour work day for additional rest breaks and will be absent from work one day per month.

(AR 20).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of his impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). Here, the ALJ found that Petitioner "is unable to perform any past relevant work," but that, considering Petitioner's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Petitioner can perform, including photocopy machine operator, cashier parking lot, and collator operator. *See* (AR 24-26). Thus, the ALJ concluded that Petitioner "has not been under a disability, as defined in the Social Security Act, from June 1, 2016, through the date of this decision." (AR 26) (internal citation omitted).

**B.     Analysis**

Petitioner contends that the ALJ's RFC determination is unsupported by substantial evidence in two distinct respects. First, Petitioner argues that the ALJ failed to properly weigh the opinion of his treating physician, Dr. Poole, claiming that the ALJ instead relied on only select portions of the record. *See* Pet.'s Brief, p. 10 (Dkt. 10). Second, Petitioner argues that the ALJ improperly discounted Dr. Lindquist's opinions regarding his reaching limitations. Each argument is addressed below.

**MEMORANDUM DECISION AND ORDER - 6**

1. <u>The ALJ Properly Considered Dr. Poole's Opinions Against the Balance of the Medical Record</u>

Dr. Poole completed three separate Standard Insurance Company functional capacity forms – one on June 23, 2016 (AR 517), one on May 11, 2017 (AR 514-16), and one on September 28, 2017 (AR 504-06). The information supplied on such forms is largely consistent, more-or-less concluding that Petitioner is disabled and cannot return to work owing to his hip pain, lower extremity weakness/instability, and significant limp. *Compare* (AR 517), *with* (AR 504-06, 514-16). The ALJ rejected the June 23, 2016 form outright, concluding that "it was completed approximately one week after [Petitioner's] last left hip surgery and did not take into consideration any post-surgical recovery made by [him]." (AR 23).[1] The opinions rendered within the subsequent May 11, 2017 and September 28, 2017 forms are virtually identical, with Dr. Poole commenting on Petitioner's ability to sit, stand, walk, balance, bend/stoop, walk on uneven surfaces, kneel, crawl, climb, reach, drive, lift, carry, push/pull, and use his hands/fingers. *Compare* (AR 504-06), *with* (AR 514-16).

Relevant here, the ALJ found persuasive Dr. Poole's opinions regarding Petitioner's ability to lift, carry, push, and pull because they are consistent with the medical record. *See* (AR 23). However, conversely, the ALJ found the remainder of Dr. Poole's opinions (namely, the extent of Petitioner's sitting, walking, standing, balancing, stooping, kneeling, and reaching limitations) unpersuasive because they are inconsistent with that same medical record. *See id*. Petitioner challenges the ALJ's rationale in this latter respect, arguing that the ALJ's "selective reading of the record cannot be said to provide substantial evidence to support finding Dr. Poole's opinion unpersuasive." Pet.'s Brief, p. 10 (Dkt. 10).

---

[1] Actually, the June 23, 2016 form appears to have *preceded* Petitioner's anticipated June 27, 2016 surgery, further supporting the ALJ's rejection of the same. *See* (AR 517). Regardless, Petitioner's arguments are not dependent upon Dr. Poole's June 23, 2016 form. *See infra*.

**MEMORANDUM DECISION AND ORDER - 7**

The ALJ must resolve ambiguities and conflicts in the medical record. *See Magallanes*, 881 F.2d at 750. An ALJ must provide clear and convincing reasons for rejecting the uncontradicted medical opinion of a treating or examining physician, or specific and legitimate reasons for rejecting contradicted opinions, so long as they are supported by substantial evidence. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). However, the ALJ need not "accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012). Additionally, the physicians' opinions may be properly discounted if they are based on internal inconsistencies, contain inconsistencies with other evidence in the record, or for other factors the ALJ deems material to resolving ambiguities. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999). Finally, an ALJ is not bound to a physician's opinion of a claimant's physical condition on the ultimate issue of disability. *Magallanes*, 881 F.2d at 751. If the record as a whole does not support the physician's opinion, the ALJ may reject that opinion. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Items that may not support the physician's opinion include clinical findings from examinations, conflicting medical opinions, conflicting physician's treatment notes, and the claimant's daily activities. *See id.*; *see also Bayliss*, 427 F.3d 1211; *Connett v. Barnhart*, 340 F.3d 871 (9th Cir. 2003); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595 (9th Cir. 1999). Against those standards, the ALJ properly considered Dr. Poole's opinions.

To begin, in discounting portions of Dr. Poole's opinions, the ALJ is not disputing that Petitioner suffers from several impairments or that those impairments limit his ability to work. To the contrary, the ALJ concluded in no uncertain terms that Petitioner suffers from, *inter alia*, reconstructive surgery of weight bearing joint, diabetes mellitus, and major joints dysfunction, and that such impairments are severe. *See supra* (citing (AR 17)). The ALJ then went on to

**MEMORANDUM DECISION AND ORDER - 8**

specifically account for Petitioner's recognized impairments and corresponding limitations during the fourth step of the sequential process (RFC analysis). *See supra* (citing (AR 20)). Therefore, to the extent Petitioner's arguments vis à vis Dr. Poole and his opinions depend upon the existence of certain limiting impairments or symptoms, such arguments miss the point because the ALJ already acknowledged as much and provided limitations in the RFC to accommodate Petitioner's symptoms. The question is not whether such impairments and symptoms exist, but the extent to which they prevent Petitioner from working at all. On this point, the ALJ offered specific and legitimate reasons, supported by substantial evidence in the record, for questioning Dr. Poole's opinions.

First, Dr. Poole opined that Petitioner could only "occasionally" (1-33% of a workday) sit *See* (AR 505). The ALJ noted, however, that Petitioner had been observed to be capable of sitting comfortably. *See* (AR 23) (citing (AR 462, 469)). Petitioner appropriately points out that such select instances are snapshots in time and do not accurately reflect Petitioner's capabilities in a more extended workplace setting. *See* Pet.'s Brief, p. 11 (Dkt. 10). There is some traction to Petitioner's retort, but it fails to address the reliance placed by the ALJ on various instances in the record where Petitioner's medical providers encouraged Petitioner to use an exercise bicycle. *See* (AR 23) (citing (AR 468, 471, 474, 678)). Such inconsistencies, coupled with the absence of evidence in the record supporting Dr. Poole's more significant sitting restrictions, ultimately apply to support the ALJ's conclusions. *See Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008); *Bayliss*, 427 F.3d at 1216. This is especially so when recognizing that, in September 2017, Petitioner denied any difficulties sitting. *See* (AR 218, 224) (Function Report-Adult stating, in part, that "[m]y ability to work is most significantly impacted by my problems with the following: lifting, squatting, standing, walking, and stair climbing," while not listing "sitting" as an item that Petitioner's impairments affected).

**MEMORANDUM DECISION AND ORDER - 9**

Second, the ALJ contested Dr. Poole's generic characterization of Petitioner's "disabling left hip pain." *See* (AR 24). Setting aside what such a statement actually means (especially in a Social Security disability determination setting),[2] the ALJ went on to highlight instances where Petitioner no longer was taking pain medication, reported no/mild pain during examinations, and was encouraged to remain as physically active as possible and to regularly perform strengthening exercises – implicitly cutting against Dr. Poole's commentary on the disabling nature of Petitioner's impairments. *See id.* (citing (AR 462, 524-25)). In response, Petitioner argues that the ALJ's reliance on any perceived noncompliance with any medication protocol ignores his intolerance to certain medications. *See* Pet.'s Brief, p. 11 (Dkt. 10) (citing (AR 47, 377, 388, 738)). Though true (at least to a degree),[3] the ALJ's point here is to simply highlight that, over time, Petitioner was apparently not in the sort of disabling pain that precluded him from working. *See, e.g.*, (AR 24) (ALJ noting that, at Petitioner's last appointment in record from October 2017, he was instructed to return in 3-4 months for repeat evaluation unless his symptoms began to

---

[2] Elsewhere within the May 11, 2017 and September 28, 2017 forms, Dr. Poole notes that Petitioner's "permanent symptoms preclude [a] return to work." (AR 504, 514). It is not clear whether Dr. Poole meant that Petitioner could not return to his previous work as a correction officer (the ALJ found he could not), or something more restrictive (for example, Petitioner being incapable of returning to any work whatsoever). Similarly, it is unclear whether Dr. Poole's references to Petitioner's alleged disabling pain neatly aligns with the functional limitations included later in the forms, or something amorphously in addition to those limitations. Because Dr. Poole goes on to discuss what Petitioner can and cannot do in a workplace setting, the import of his references to Petitioner's alleged disabling pain is lessened (if it can even be fully understood). All this is to say that, at bottom, the ALJ clearly disagreed with Dr. Poole's possible conclusion that Petitioner is disabled and cannot work at all. Such a determination is indisputably the province of the ALJ. *See, e.g.*, 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3) ("We will not give any special significance to the source of an opinion on issues reserved to the Commissioner [(whether a claimant meets the statutory definition of disability)].").

[3] Petitioner contends that certain pain medications (including aspirin, Vicodin/Norco, and oxycodone) make him ill. *See* (AR 47, 377). However, he is able to tolerate Advil and, apparently, Tramadol. *See* (AR 47); Respt's Brief, p. 4, n.2 (Dkt. 11) (citing (AR 361, 387-89)); *see also* (AR 506, 516) (Dr. Poole noting that Petitioner has been prescribed Tramadol).

**MEMORANDUM DECISION AND ORDER - 10**

"acutely worsen"; and that, as of May 2018 hearing, Petitioner had not returned for further evaluation and was not scheduled for another appointment until June 2018 – eight months after October 2017 appointment) (citing (AR 35, 462)). In other words, regardless of Petitioner's medication (in)tolerances, the ALJ found Dr. Poole's references to Petitioner's disabling and constant pain – taken literally – to be inconsistent with the overall balance of the medical record.

Third, in addressing Dr. Poole's references to Petitioner's "constant significant limp" and associated walking/standing limitations, the ALJ again drew upon medical records that cast doubt upon any disabling connotation those conditions may suggest, while also observing that there are no walking or standing limitations in any post-May 2017 treatment records. *See* (AR 24) (citing (AR 474, 525)) (referencing instances in record where medical provider reported no limp and normal gait, with Petitioner no longer using any ambulatory aids).[4] Petitioner counters that his provider actually instructed him to utilize a crutch and provided a prescription for pain relief in these same records, indicating that he was indeed "more limited than the ALJ attempted to make this record appear." Pet.'s Brief, pp. 11-12 (Dkt. 10); *but see* Respt's Brief, p. 4 (Dkt. 11) ("And while one provider once suggested [Petitioner] use a crutch 'for the time being,' this was in the context of [Petitioner's report of increased pain. Three weeks later, [Petitioner] reported his pain had 'subsided significantly,' and he was not using any ambulatory aids or

---

[4] The ALJ also contrasted Dr. Poole's comments about Petitioner's marked left lower extremity weakness, balancing limitation, and instability with his opinion that Petitioner could nonetheless occasionally lift over 50 pounds. *See* (AR 24) ("Also, Dr. Poole wrote on these forms that the claimant could lift over 50 pounds occasionally, which is inconsistent with someone who has 'marked' weakness and instability."). Petitioner disregards such a rationale, reasoning that "Dr. Poole's knowledge of [Petitioner's] impairments was fairly limited to [Petitioner's] ability to utilize his hips and lower extremities, as he did not treat [Petitioner] for his shoulder impairment." Pet.'s Brief, p. 12 (Dkt. 10). The undersigned reads the ALJ's justification a bit differently – namely, that the ALJ was not so much critiquing Dr. Poole's opinion concerning Petitioner's ability to lift a given weight, but rather that Dr. Poole's opinion on this point cannot be reconciled with his simultaneous opinion that Petitioner has marked lower extremity weakness and instability.

**MEMORANDUM DECISION AND ORDER - 11**

medication.") (citing (AR 404, 669)).  But as before, the relevant issue here is less about the existence of a limp, the use of an ambulatory device, or any walking/standing limitations;[5] instead, it is more about whether these circumstances prevent Petitioner from working.  *See supra*.  To the extent Dr. Poole says that this is indeed the case, the ALJ's citations to the record support a different conclusion.  *See also* (AR 81, 95) (consistent with ALJ's RFC assessment, Drs. Arnold and Lindquist separately concluding that Petitioner could stand and/or walk about six hours in an eight-hour workday (with normal breaks) as part of administrative findings).

From all of this, it is clear that Petitioner suffers from several impairments (acknowledged as "severe" by the ALJ (*see* (AR 17)) that impact his ability to work.  However, the ALJ provided specific legitimate reasons for rejecting or questioning certain of Dr. Poole's opinions.  Petitioner argues that those opinions were not given the weight they deserved, but such opinions were considered in the context of the surrounding medical record.  This Court's role does not extend to resolving the conflicting evidence and ultimately deciding whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations.  Rather, this Court must decide whether the ALJ's decision that Petitioner is not disabled is supported by the record.  This record informs the ALJ's decisions on how to consider the various opinions, including Dr. Poole's.  The ALJ decided to discount certain opinions while crediting others.  He supports his decision by clear and convincing, specific, and legitimate reasons.  Hence, because the evidence can reasonably support the ALJ's conclusions in these respects, this Court will not substitute its judgment for that of the ALJ's even if this Court were to have a different view.  *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

---

[5] After all, the ALJ's assessment of Petitioner's physical impairments and his resulting ability to perform light work (as indicated by Petitioner's RFC) clearly included walking and standing limitations, alongside an acknowledgment that Petitioner "would require a cane for ambulation in the workplace."  (AR 20).

**MEMORANDUM DECISION AND ORDER - 12**

### 2. Dr. Lindquist's Reaching Limitation is Consistent With The Jobs Identified at Step Five of the Sequential Process

Petitioner argues that the ALJ improperly disregarded Dr. Lindquist's opinions regarding Petitioner's reaching limitations and that, had he done so, certain occupations would not have been available to Petitioner in significant numbers in the national economy. *See* Pet.'s Brief, p. 15 (Dkt. 10) ("Therefore, the ALJ did not state adequate reasons for finding that Dr. Lindquist's reaching limitation was unpersuasive. As the [vocational expert] testified that such a reaching limitation would result in only one available job with 8,000 jobs in the national economy, this would not allow for occupations available in significant numbers in the national economy."). However, as Defendant points out, Dr. Lindquist found Petitioner was limited to frequent overhead reaching bilaterally, and that such a limitation is consistent with all of the jobs identified at step five of the sequential process. *See* Respt's Brief, pp. 5-6 (Dkt. 11) (citing (AR 96) (Dr. Lindquist noting: "Limit OH reaching bilat to frequently")).

Petitioner did not continue with this argument in his reply briefing. Therefore, after reviewing the record, the Court agrees that Dr. Lindquist's reaching limitations are consistent with the jobs identified at step five of the sequential process.

## IV. CONCLUSION

The ALJ, as fact-finder, must weigh the evidence, draw inferences from facts, and determine credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its interpretation for that of the ALJ. *Key*, 754 F.2d at 1549. The ALJ has provided reasonable and rational support for his well-formed conclusions, even if such evidence is susceptible to a different interpretation. Accordingly, the ALJ's decisions as to Petitioner's disability claim were based on proper legal standards and

**MEMORANDUM DECISION AND ORDER - 13**

supported by substantial evidence. Therefore, the Commissioner's decision that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

The Commissioner's decision is affirmed.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety, with prejudice.

DATED: July 16, 2020

_____
Ronald E. Bush
Chief U.S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**